**Michael C. EVANS, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–9986.

Court of Appeals of Alaska.

May 28, 2010.

Marjorie Allard, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Daniel S. Sullivan, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

*OPINION*

MANNHEIMER, Judge.

The defendant, Michael C. Evans, was tried and convicted of various counts of burglary, theft, and criminal mischief, stemming from a series of burglaries committed near Sterling and Soldotna in the summer of 2006. The question presented in this appeal is whether a mistrial should have been declared when, in the middle of Evans's trial, the State tardily disclosed information concerning exculpatory statements given by one of Evans's co-defendants, Joshua Kartchner.

Based on the pre-trial disclosures made by the State and statements made by the prosecutor, it appeared (when Evans's trial began) that Kartchner was cooperating with the State, that he had concluded a plea agreement with the State, that he had agreed to submit to a police interview, and that he would be testifying against Evans at trial. Based on this information, when Evans's defense attorney delivered her opening statement at the beginning of the trial, she attacked Kartchner's credibility.

However, the State did not call Kartchner to the stand during the first week of Evans's trial. Then, on Monday of the second week of Evans's trial, the prosecutor gave the defense attorney an audio recording of the interview that Kartchner had given to the police three weeks earlier (*i.e.*, two weeks before Evans's trial began). The prosecutor announced that the State no longer intended to call Kartchner as a witness— and that, in fact, the defense attorney might

want to call Kartchner as witness, because Kartchner's police interview was "potentially exculpatory".

█ Under Alaska Criminal Rule 16(b)(1)(A)(iii), the government is required to automatically disclose "[a]ny ... recorded statements ... made by a co-defendant". Thus, Evans's attorney should have received a copy of Kartchner's police interview before the trial began. The prosecutor conceded to the trial judge that she had "no good explanation" for the State's failure to disclose this material earlier.

Moreover, in Kartchner's police interview, he stated that he had spoken to another co-defendant who was cooperating with the State, Jerome Himmel, about the crimes charged in this case. According to Kartchner, when Himmel described one of the charged burglaries, he named three people as having participated in that burglary—and Evans was not among them. Kartchner also offered an exculpatory explanation for Evans's later possession of some of the stolen property: Kartchner said that he witnessed Evans purchase a large red tool box from Himmel for $300.

As noted above, the trial prosecutor indicated (when she turned the audio recording of this interview over to the defense attorney) that Kartchner's statements were "potentially exculpatory". And on appeal, the State does not contest that Kartchner's statements were exculpatory evidence within the meaning of Criminal Rule 16(b)(3), which requires the government to "disclose ... any material or information within the prosecuting attorney's possession or control which tends to negate the guilt of the accused".

Instead, the issue litigated in the superior court, and the issue litigated now on appeal, is whether Evans was prejudiced by the late disclosure of this information so as to require the trial judge to declare a mistrial.

█ Under *Bostic v. State*, 805 P.2d 344, 348–49 (Alaska 1991), as interpreted by this Court in *Jurco v. State*, 825 P.2d 909, 916–17 (Alaska App.1992), once the defendant articulates one or more plausible ways in which the defense case was prejudiced by the State's tardy, mid-trial disclosure of information that

should have been disclosed earlier under Criminal Rule 16(b), the defendant is entitled to a mistrial unless the State affirmatively proves that the defendant was not prejudiced in the manner claimed.

Evans might not have been prejudiced by the late disclosure of Kartchner's exculpatory statements if Evans had been able to call Kartchner as a witness and examine him concerning these statements. However, when Evans's attorney tried to call Kartchner as a defense witness at trial, Kartchner claimed the Fifth Amendment privilege. (Even though Kartchner had negotiated a plea agreement with the State, he had not yet actually pleaded guilty pursuant to that agreement.) The trial judge upheld Kartchner's claim of privilege, thus making him unavailable as a witness.

(We express no opinion on the correctness of this ruling.)

Evans's attorney told the trial judge that, if Kartchner's claim of privilege was upheld, then Evans desired a mistrial. The defense attorney declared that if the exculpatory nature of Kartchner's interview had been revealed in a timely fashion (*i.e.*, before Evans's trial began), the defense attorney "[might] have done a lot of different things". In particular, the defense attorney suggested that she would have sought or agreed to a continuance of the trial until after Kartchner pleaded guilty (pursuant to his plea bargain with the State), so that Kartchner would be available as a witness. The trial judge denied the requested mistrial.

The trial judge noted that, even though the State failed to disclose the exculpatory *contents* of Kartchner's police interview until the middle of trial, the State did notify Evans's defense counsel, before trial, of the *fact* of the interview (specifically, that Kartchner had agreed to cooperate with the government and that he had agreed to submit to a police interview). In essence, the trial judge concluded that because the defense attorney knew that Kartchner had been, or was about to be, interviewed by the police, and because the defense attorney chose to begin the trial even though the State had not yet disclosed the contents of this interview, the defense

attorney assumed the risk that Kartchner's interview might contain exculpatory information.

We reject this analysis. As we have explained, Rule 16(b)(1)(A)(iii) required the State to disclose the contents of Kartchner's police interview to Evans's attorney, without request and without regard to whether that interview was exculpatory to Evans. The fact that the interview was, in fact, exculpatory only reinforced this duty of disclosure—because, given the exculpatory nature of Kartchner's statements, the State was additionally obliged to disclose the interview under Rule 16(b)(3).

Conceivably, there might be times when a defense attorney knows that a witness has been interviewed, and knows that the transcript or audio record of that interview has not yet been produced, but nevertheless expressly decides to begin the trial without the transcript or audio record. In such instances, it might be fair to conclude that the defense attorney has assumed the risk that there might be discrepancies between the precise content of the interview and whatever summary or characterization of the interview has previously been offered.

But the facts of Evans's case do not lend themselves to this sort of analysis or conclusion. It is true that Evans's attorney was notified that Kartchner had reached an agreement with the State, and that Kartchner had agreed to be interviewed by the police. Thus, the defense attorney was aware, when Evans's trial began, that a police interview with Kartchner had either already taken place or was imminent. But, in context, the implication was that the contents of Kartchner's interview would support the government's case against Evans.

Because Criminal Rule 16(b)(3) requires the State to notify defendants when the State obtains exculpatory information, and because the State had not notified Evans's attorney of any exculpatory information, Evans's attorney could justifiably proceed under the assumption that Kartchner had not made any exculpatory statements during his police interview. This assumption turned out to be wrong—and the defense attorney was laboring under this mistaken assumption because the State violated its duty of disclosure under Rule 16(b).

If the defense attorney had known that Kartchner was apparently prepared to assert that Evans was innocent of at least one of the burglaries and thefts, then it seems likely that the defense attorney would have taken steps to make sure that Kartchner was available as a witness at Evans's trial.

As we have explained, when this issue was litigated in the superior court, Evans's attorney told the trial judge that she would have asked for, or agreed to, a continuance of Evans's trial until after Kartchner completed his plea bargain with the State and actually changed his plea—thus potentially resolving the Fifth Amendment issues that were currently making Kartchner unavailable as a witness. And, from the record of Evans's trial, it is clear that if the defense attorney had been able to call Kartchner to the stand and examine him about his exculpatory statements, the defense case would have looked much different.

For these reasons, we conclude that the State failed to meet its burden under *Bostic* of disproving prejudice. Accordingly, the trial judge should have granted Evans's motion for a mistrial. The judgement of the superior court is REVERSED.